IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____

CIVIL ACTION NO. DKC-06-937

_____

LEBON B. WALKER,

Petitioner

v.

FRANK C. SIZER, JR., et al.

Respondents

_____

ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS AND ORDER TO SHOW CAUSE

_____

J. JOSEPH CURRAN, JR.
Attorney General of Maryland

MARY ANN INCE
Assistant Attorney General
Bar No. 07745

Office of the Attorney General
Criminal Appeals Division
200 Saint Paul Place
Baltimore, Maryland 21202
(410) 576-6970 (telephone)
(410) 576-6475 (telecopier)

Counsel for Respondents

TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.    Direct and collateral review proceedings  . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.    State habeas proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.    ALLEGATIONS IN THIS COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.     EXHAUSTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.    REASONS FOR DENYING THE WRIT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       A.    Walker's claims are time-barred  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       B.    The Court of Appeals reasonably applied clearly established federal law
             in concluding that Walker was properly denied post conviction relief  . . 23

       C.    The Court of Appeals reasonably applied clearly established federal law
             in concluding that Walker was properly tried *in absentia*  . . . . . . . . . . . . 38

       D.    Walker's claim regarding the state court's denial of habeas relief in
             connection with his sentences is not cognizable and is procedurally
             defaulted in any event  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

VII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEBON B. WALKER, | * | |
| Petitioner | * | |
| v. | * | CIVIL ACTION NO. DKC-06-937 |
| FRANK C. SIZER, JR., et al., | * | |
| Respondents | * | |

\*       \*       \*       \*       \*       \*       \*

ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS AND ORDER TO SHOW CAUSE

Pursuant to this Court's Order dated April 19, 2006, and in accordance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, Respondents, Frank C. Sizer, Jr., former Commissioner[1], Maryland Division of Correction, David R. Blumberg, Chairman, Maryland Parole Commission, and J. Joseph Curran, Jr., Attorney General of the State of Maryland, by undersigned counsel, hereby answer the petition for a writ of habeas corpus filed by Petitioner Lebon B. Walker[2] in this Court on April 5, 2006. By his petition, Walker attacks his year 1994 convictions, in the Circuit Court for Montgomery County, Maryland, for nine counts of theft of property having a value of $300.00 or greater and one count of conspiracy to commit theft. For the reasons set forth herein, this Court should deny Walker's petition without holding a hearing.

_____

[1] John A. Rowley is currently Acting Commissioner.

[2] In documents and transcripts filed in the state courts, Walker's first name also appears as "Lebron" and "Le'Bon," and Walker's full name also appears as "Le'Bon Walker," "L. B. Walker, Sr.," and "Labon B. Walter."

## I.  INTRODUCTION

On April 24, 1996, President Clinton signed the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter the AEDPA).  The provisions of the AEDPA apply to cases filed in this Court after April 24, 1996, and thus, to the extent otherwise applicable, to Petitioner Walker's case.  *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997); *Mueller v. Angelone*, 181 F.3d 557, 565-69 (4th Cir.), *cert. denied*, 527 U.S. 1065 (1999).

## II.  EXHIBITS

Copies of the documents listed below, which consist of state court records relating to Walker's trial and state post conviction proceedings, as well as his state habeas corpus proceeding in the Circuit Court for Baltimore City, are being filed with this answer pursuant to Habeas Rule 5.   Walker's trial, sentencing and post conviction proceedings were transcribed and are being provided as exhibits. Although Respondents believe that Walker's claims can be resolved based on the documents provided, they will attempt to provide any additional documents the Court wishes to review.

Exhibit 1:    Circuit Court for Montgomery County docket entries for Case No. CT 63524.

Exhibit 2:    Transcript of proceedings on January 14, 1993.

Exhibit 3:    Transcript of proceedings on January 18, 1993.

Exhibit 4:    Transcript of proceedings on January 19, 1993.

Exhibit 5:    Transcript of proceedings on January 20, 1993.

Exhibit 6:    Transcript of proceedings on January 21, 1993.

Exhibit 7:    Transcript of proceedings on January 22, 1993.

Exhibit 8:      Transcript of proceedings on January 25, 1993.

Exhibit 9:      Transcript of proceedings on January 26, 1993.

Exhibit 10:     Transcript of proceedings on January 27, 1993.

Exhibit 11:     Transcript of proceedings on January 28, 1993.

Exhibit 12:     Transcript of proceedings on January 29, 1993.

Exhibit 13:     Transcript of proceedings on February 1, 1993.

Exhibit 14:     Transcript of proceedings on February 2, 1993.

Exhibit 15:     Transcript of proceedings on February 2, 1994.

Exhibit 16:     Brief of Appellant in the Court of Special Appeals of Maryland.

Exhibit 17:     Brief of Appellee in the Court of Appeals of Maryland.

Exhibit 18:     Opinion of the Court of Appeals of Maryland, filed May 10, 1995 (reported at 338 Md. 253, 658 A.2d 239).

Exhibit 19:     Petition for Writ of Certiorari to the Supreme Court.

Exhibit 20:     Motion to Reinstate Post Conviction Petition, filed in the Circuit Court for Montgomery County on September 27, 2001.

Exhibit 21:     Petitioner's Opposition to State's Motions to Strike Pleadings, filed April 24, 2002.

Exhibit 22:     Amended Petition for Post Conviction Relief, filed May 15, 2002.

Exhibit 23:     Supplement to Amended Petition for Post Conviction Relief, filed May 1, 2003.

Exhibit 24:     Transcript of post conviction hearing on July 31, 2003.

Exhibit 25:    Order of Court (Rupp, J.), filed September 4, 2003 (with transcript of ruling).

Exhibit 26:    Brief of Appellant in the Court of Special Appeals of Maryland.

Exhibit 27:    Brief of Appellee in the Court of Special Appeals of Maryland.

Exhibit 28:    Reply Brief of Appellant in the Court of Special Appeals of Maryland.

Exhibit 29:    Opinion of the Court of Special Appeals of Maryland, filed April 26, 2004 (reported at 161 Md. App. 253, 868 A.2d 898).

Exhibit 30:    Petition for Writ of Certiorari.

Exhibit 31:    Brief of Petitioner in the Court of Appeals of Maryland.

Exhibit 32:    Brief of Respondent in the Court of Appeals of Maryland.

Exhibit 33:    Reply Brief of Petitioner in the Court of Appeals of Maryland.

Exhibit 34:    Opinion of the Maryland Court of Appeals, filed February 10, 2006 (reported at 391 Md. 233, 892 A.2d 547).

Exhibit 35:    Circuit Court for Baltimore City docket entries for Case No. 24-H-98-104900 HC.

Exhibit 36:    Memorandum Opinion and Order of Court (Waxter, J.), filed November 5, 1998.

Exhibit 37:    Motion to Alter or Amend Judgment and Stay Proceedings, filed November 16, 1998.

Exhibit 38:    Petitioner's Opposition to Motion to Alter or Amend Judgment and Stay Proceedings, filed November 20, 1998.

Exhibit 39:    Order of Court (Waxter, J.), dated April 10, 2001.

Exhibit 40:    Motion for Reconsideration, filed May 9, 2001.

Exhibit 41:     Memorandum and Order of Court (Waxter, J.), dated March 4, 2002, with Corrected Order dated March 5, 2002.

Exhibit 42:     Petitioner's Supplemental Motion for Reconsideration, filed May 31, 2002.

Exhibit 43:     Order of Court and Memorandum (Waxter, J.), filed June 27, 2002.

Exhibit 44:     Brief of Appellant in Court of Special Appeals of Maryland.

Exhibit 45:     Brief of Appellee in Court of Special Appeals of Maryland.

Exhibit 46:     Unreported Opinion of the Court of Special Appeals of Maryland filed on August 6, 2003.

Exhibit 47:     Petition for Writ of Certiorari.

## III. STATEMENT OF THE CASE

A.     **Direct and collateral review proceedings.**

By indictment filed in the Circuit Court for Montgomery County on October 4, 1991, Petitioner Walker was charged with one count of conspiracy to commit theft, Count 1, and nine counts of theft of property having a value of $ 300.00 or greater, counts 2 through 10. Exhibit 1 at 1, 3. On November 20, 1992, Walker, along with his two co-defendants, his wife, Patricia Annette Lee, and his mother-in-law, Lee's mother Anna L. Hall, were scheduled for trial by jury in the Circuit Court for Montgomery County beginning on January 18, 1993. *See* Exhibit 1 at # 199. Prior to trial, on January 10, 1993, Walker and Lee disappeared and bench warrants were issued for their arrests. *See* Exhibit 1 at # 215; Exhibit 2. Walker and Lee did not appear for trial and were tried in absentia on various dates from January 18, 1993, through February 2, 1993. Exhibits 3-14. Walker was convicted on all counts. Exhibit 14 at 8-10; Exhibit 1 at

# 261.  At a hearing one year later, on February 2, 1994, with Walker and Lee in attendance, Walker's motion for a new trial was denied and Walker was sentenced (Harrington, J.) to nine consecutive terms of imprisonment of three years each on the theft convictions and a concurrent three-year term of imprisonment on the conspiracy conviction. Exhibit 15; Exhibit 1 at ## 312, 315.

Walker and Lee noted a consolidated appeal to the Maryland Court of Special Appeals, in which, through counsel, they raised two issues: 1) "Did the trial court's acquiescence in defense counsel's refusal to participate in the trial deny [Walker and Lee] their Sixth Amendment right to counsel?"; 2) "Did the trial court err in permitting [Walker and Lee] to be tried in absentia when they were not present at the time trial commenced and defense counsel declined to participate in the proceeding?"  Exhibit 16 .  The State's responding Brief of Appellee, Exhibit 17, was filed in the Maryland Court of Appeals inasmuch as that court issued a writ of certiorari on its own initiative to review the case prior to decision by the intermediate appellate court. The Court of Appeals affirmed Walker's convictions, as well as those of Lee, in a reported opinion filed on May 10, 1995. Exhibit 18; *Walker and Lee v. State of Maryland*, 338 Md. 253, 658 A.2d 239 (1995); *see also*  Exhibit 1 at # 367.  The Court of Appeals denied reconsideration on June 15, 1995, after which Walker's petition for certiorari review in the United States Supreme Court, Exhibit 19, in which, through counsel,  he sought review of the two claims raised in the Maryland Court of Appeals. Walker's petition was denied on October 2, 1995. *See Walker v. Maryland,*  516 U.S. 898 (1995).

6

On January 31, 1996, Walker filed a petition for post conviction relief. *See* Exhibit 1 at # 385. Walker's motion to withdraw the petition without prejudice, filed on September 6, 1996, *see* Exhibit 1 at # 414, was granted by the circuit court on September 9, 1996, *see id*. at # 415. On April 10, 1997, Walker filed a second petition for post conviction relief. *See* Exhibit 1 at # 419, which he amended on October 5, 1998, *see id*. at # 445. Walker's motion to withdraw his second post conviction petition without prejudice, filed on August 1, 2000, *see* Exhibit 1 at # 447, was granted by the circuit court on June 19, 2001, *see id*. at # 451.

On September 27, 2001, Walker filed a motion to reinstate his second petition for post conviction relief. Exhibit 20; *see* Exhibit 1 at # 454. Walker also "resubmitted" a post conviction petition on October 16, 2001, Exhibit 1 at ## 456, 457, which he supplemented on October 31, 2001, *see id*. at # 458. On April 5, 2002, new counsel entered an appearance on Walker's behalf. Exhibit 1 at # 461. On April 12, 2002, the State moved to strike Walker's "resubmitted" post conviction petition and corresponding supplement, Exhibit 1 at # 462. In Petitioner's Opposition to State's Motion to Strike Pleadings, filed on April 24, 2002, Exhibit 21, *see also* Exhibit 1 at # 463, Walker's new attorney opposed the State's motion to strike Walker's "resubmitted" post conviction petition and corresponding supplement due to Walker's failure to serve those documents on the State, Exhibit 21 at 3 ¶ 7, and also stated new counsel's "intention to filed a Petition for Post-Conviction Relief in the near future," Exhibit 21 at 3 ¶ 8. On May 15, 2002, Walker's new counsel filed an "Amended Petition for Post-Conviction Relief." Exhibit 22; *see also* Exhibit 1 at # 465.

On May 31, 2002, Walker's "resubmitted" post conviction petition and corresponding supplement, Docket Entries items ## 456, 457, and 458, were stricken by the circuit court for failure to comply with Maryland Rule 1-321, *see* Exhibit 1 at # 467, and Walker's petition to reinstate his second post conviction petition was also denied by the circuit court, *see* Exhibit 1 at 468.   On May 1, 2003, Walker filed a Supplement to Amended Petition for Post-Conviction Relief.   Exhibit 23; *see* Exhibit 1 at # 473. On July 31, 2003, the circuit court (Rupp, J.) conducted a hearing on Walker's Amended Petition for Post-conviction Relief, Docket Entry # 465, Exhibit 22, and Supplement to Amended Petition for Post-Conviction Relief, Docket Entry # 473, Exhibit 23.   *See* Exhibit 24; *see also* Exhibit 1 at # 479. By his petition as amended Walker alleged: 1) that "trial counsel's failure to participate in the defense of the State's accusations at trial represents a denial of the right to counsel and a complete breakdown in the adversarial judicial process requiring a new trial in this case,"*see* Exhibit 22 at 4-11; 2) that "in the absence of presumed prejudice, trial counsel's failure to participate in the trial in this case was deficient performance from which Petitioner was prejudiced," *see* Exhibit 22 at 11-12; and, 3) that "the trial court erred in holding trial *in absentia*" because he "was never arraigned and never entered a plea,"*see* Exhibit 23 at 2.   Walker also claimed ineffective assistance of counsel due to trial counsel's failure to a) litigate pre-trial motions, b) conduct an adequate investigation, c) give an opening statement, d) cross-examine any of the state's witnesses, e) object to improper evidence offered by the state, f) subpoena or call any defense witnesses to testify at trial, g) object to potentially erroneous jury instructions or request a defense theory of the case instruction, h) give a closing argument, i) argue for the

8

merger of counts, present mitigating evidence and object to the ambiguous start date of the defendant's sentence at sentencing. Exhibit 22 at 12-1. Walker also alleged ineffective assistance by trial and appellate counsel for failure, respectively, to present or litigate on appeal the absence of an arraignment issue. Exhibit 23 at 2-3; *see also* Exhibit 24 at 5-10. At the conclusion of the post conviction hearing, Judge Rupp denied the petition, indicating that a transcript of his ruling would be filed. Exhibit 24 at 93-99; *see also* Exhibit 1 at # 479. By Order of Court filed on September 4, 2003, Walker's post conviction petition was denied. Exhibit 25; *see also* Exhibit 1 at # 482.

Walker's Application for Leave to Appeal, filed on October 2, 2003, *see* Exhibit 1 at # 484, was granted by the Court of Special Appeals upon reconsideration of the court's initial denial. In his appeal, Walker argued: "Prejudice should be presumed, under *United States v. Cronic*, and a new trial granted, where trial counsel stood totally mute throughout Mr. Walker's trial." Walker contended that: A) trial counsel failed to subject the prosecution's case against walker to "Meaningful Adversarial Testing" and his silence throughout the trial amounted to the constructive denial of counsel; B) trial counsel's silence throughout Walker's trial was structural error warranting a new trial. Exhibit 26 (Brief of Appellant); *see also* Exhibit 27 (State's Responding Brief of Appellee), Exhibit 28 (Appellant's Reply Brief). On reconsideration, in a reported opinion filed on February 24, 2005, the Court of Special Appeals affirmed the circuit court's denial of post conviction relief. Exhibit 29; *Walker v. State*, 161 Md. App. 253, 868 A.2d 898 (2005). Walker filed a Petition for Writ of Certiorari on March 23, 2005, in which he sought review of the claim raised in the intermediate appellate court.

Exhibit 30.  The Court of Appeals granted certiorari review.  *Walker v. State*, 387 Md. 462, 875 A.2d 767 (2005).  *See* Exhibit 31 (Brief of Petitioner), Exhibit 32 (State's Brief of Respondent), Exhibit 33 (Reply Brief of Petitioner).  In an opinion filed on February 10, 2006, the Court of Appeals affirmed the ruling of the intermediate appellate court upholding the denial of post conviction relief.  Exhibit 34; *Walker v. State*, 391 Md. 233, 892 A.2d 547 (2006).

**B.      State habeas proceedings.**

Walker also initiated state habeas corpus proceedings, inter alia, by a petition filed on April 16, 1998, in the Circuit Court for Baltimore City, Case No. 24-H-98-104900 HC. *See* Exhibit 35 at 3.  By Memorandum Opinion and Order of Court (Waxter, J.), filed on November 5, 1998,  the circuit court granted habeas relief and ordered Walker's release. Exhibit 36; *see also* Exhibit 35 at 3. On November 16, 1998, the State filed a Motion to Alter or Amend Judgment and Stay Proceedings, Exhibit 37; *see also* Exhibit 35 at 3, which Walker opposed on November 20, 1998, Exhibit 38; *see also* Exhibit 35 at 3.

By Order (Waxter, J.) dated April 10, 2001, the circuit court granted the State's Motion to Alter or Amend, vacated its order granting Walker habeas relief, and denied and dismissed Walker's petition for habeas relief.  Exhibit 39; *see also*  Exhibit 35 at 4.  Upon consideration of Walker's Motion for Reconsideration filed May 9, 2001, Exhibit 40; *see* Exhibit 35 at 4, the circuit court denied reconsideration in an Order of Court and Memorandum dated March 4, 2002, and Corrected Order dated March 5, 2002, Exhibit 41; *see also* Exhibit 35 at 6. Walker filed a Supplemental Motion for Reconsideration, Exhibit 42, which was denied by

10

Order of Court and Memorandum (Waxter, J.) filed on June 27, 2002, Exhibit 43. *See* Exhibit 35 at 6.

Walker noted an appeal from the circuit court's denial of his supplemental motion for reconsideration on July 22, 2002, *see* Exhibit 35 at 7. By his appeal, Walker, through counsel, raised the single issue of whether the circuit court abused its discretion in denying his motion for reconsideration of the denial of habeas relief. Exhibit 44 (Brief of Appellant); *see also* Exhibit 45 (responding Brief of Appellee). In an unreported opinion filed on August 6, 2003, the Court of Special Appeals affirmed the circuit court's ruling. Exhibit 46. Walker filed a pro se Petition for Writ of Certiorari on September 18, 2003, in which he claimed that the Court of Special Appeals erred by: 1) failing to hold that the Supreme Court mandates that the sentence orally pronounced by the sentencing judge is the only sentence to be served; 2) failing to hold that the language use by the sentencing judge constitutes the actual sentence; 3) failing to hold that a writ of habeas corpus requires the court to search the record underlying the conviction; 4) failing to hold that Walker could not seek relief for all violations of his constitutional rights and limiting the issue to whether the circuit court abused its discretion in denying Walker's motion for reconsideration; 5) holding that Walker did not file a timely notice of appeal from the circuit court's April 10, 2001, ruling granting the State's motion to alter and amend; 6) failing to hold that the circuit court did not have jurisdiction to hear a motion for reconsideration that was filed after the timely filing of a notice of appeal; 7) failing to hold that the circuit court's orders denying Walker's motion and supplemental motion for reconsideration were moot; and, 8) issuing a moot opinion. Exhibit 47. Walker's petition was

11

denied by the Court of Appeals on  December 16, 2003.  *Walker v. State*, 378 Md. 617, 837 A.2d 927 (2003).

The facts of Walker's case have been accurately set forth in the state courts in addressing Walker's direct appeal.  *See* Exhibit 18 at 1-5, *Walker and Lee v. State*, 338 Md. 253, 255-58, 658 A.2d 239, 240-42, *cert. denied*, 516 U.S. 898 (1995), Exhibit 16 at 3-10, Exhibit 17 at 2-10, Exhibit 46 at 1-13.  Additional facts will be set forth as those facts relate to the claims raised by Walker.

## IV.  ALLEGATIONS IN THIS COURT

By petition for writ of habeas corpus filed on April 5, 2006, Walker seeks relief pursuant to 28 U.S.C. § 2254. *See* HC Petition at 1-2. In support of his request, Walker presents three grounds, claiming: A) "The Court of Appeals of Maryland, on Post Conviction Review, Unreasonably Declined to Apply the Presumption of Prejudice  Set out in *United States v. Cronic*, 466 U.S. 648 (1984), to Petitioner's Claim of Ineffective Assistance of Trial Counsel Where Counsel, by His Non-Participation at Petitioner's Jury Trial Held *in Absentia*, Failed to Subject the Prosecutions's Case Against Petitioner to 'Meaningful Adversarial Testing'"; B) "The Court of Appeals, on Direct Review, Unreasonably Determined Facts Established at the Trial and Unreasonably Applied Well Established Supreme Court Case Law in Holding That Petitioner Was Properly Tried in Absentia"; C) "The Circuit Court Unreasonably Applied Well Established Supreme Court Case Law in Denying State Habeas Corpus Relief to Petitioner on the Basis That His Sentences Were Illegal." HC Petition at 4-5, and  HC Memorandum at 8-28.

## V.  EXHAUSTION

28 U.S.C. § 2254 (1996) states as follows in subsections (b) and (c):

>       (b)(1)  An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be granted unless
> it appears that–
>
>             (A)     the applicant has exhausted the remedies available in the
> courts of the State; or
>
>             (B)(i)  there is an absence of available State corrective process; or
>
>             (ii)     circumstances exist that render such process ineffective to
> protect the rights of the applicant.
>
>       (2)     An application for a writ of habeas corpus may be denied on the
> merits, notwithstanding the failure of the applicant to exhaust the remedies
> available in the courts of the State.
>
>       (3)     A State shall not be deemed to have waived the exhaustion
> requirement or be estopped from reliance upon the requirement unless the State,
> through counsel, expressly waives the requirement.
>
>       (c)     An applicant shall not be deemed to have exhausted the remedies
> available in the courts of the State, within the meaning of this section, if he has
> the right under the law of the State to raise, by any available procedure, the
> question presented.

Pursuant to the exhaustion requirement codified in Section 2254(b) and (c), and absent

a valid excuse, a state prisoner seeking federal habeas corpus relief must first present each of

his claims to the state courts having jurisdiction to consider them, *Gray v. Netherland*, 518

U.S. 152, 161-65 (1996); *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Castille v.

Peoples*, 489 U.S. 346, 349-52 (1989), including the state's highest court, *O'Sullivan v.*

13

*Boerckel*, 526 U.S. 838, 842-49 (1999); *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (per curiam), *cert. denied*, 528 U.S. 1127 (2000); *Anthony v. Schuppel*, 86 F. Supp. 2d 531, 535-36 (D. Md. 2000).  In order for a state prisoner to have satisfied the exhaustion requirement, he must have fairly presented both the same legal claims and the same supporting facts to each of the appropriate state courts. *Baldwin v. Reese*, 124 S. Ct. 1347, 1349 (2004); *Gray v. Netherland*, 518 U.S. at 162-63; *Duncan v. Henry*, 513 U.S. 364, 364-66 (1995) (per curiam); *Satcher v. Pruett*, 126 F.3d 561, 573 (4th Cir.), *cert. denied*, 522 U.S. 1010 (1997); *Gray v. Netherland*, 99 F.3d 158, 161-62 (4th Cir. 1996), *cert. denied*, 519 U.S. 1157 (1997); *Mallory v. Smith*, 27 F.3d 991, 994-95 (4th Cir.), *cert. denied*, 513 U.S. 1047 (1994).  If a petitioner has failed in any of these regards and if there remains a reasonable possibility that there is any available procedure, either by way of direct appeal or a post conviction proceeding, for the prisoner to secure review by the state courts, the claim is not exhausted.  *See* 28 U.S.C. § 2254(c); *Gray v. Netherland*, 518 U.S. at 161-66; *Meadows v. Legursky*, 904 F.2d 903, 909-10 (4th Cir.) (en banc), *cert. denied*, 498 U.S. 986 (1990).

Application of these exhaustion principles to a specific case entails two distinct inquiries. First, the federal court must ascertain whether the prisoner has indeed fairly presented his claims with the same supporting facts and legal theories in every one of the appropriate state courts.  *See, e.g.*, *Gray v. Netherland*, 518 U.S. at 161-66; *Gray v. Netherland*, 99 F.3d at 161-64; *Mallory v. Smith*, 27 F.3d at 994-96.  Second, where it appears that the prisoner has failed to do so, the federal court must additionally consider whether this default has rendered further state review unavailable. *See Gray v. Netherland*, 518 U.S. at 161-

62; *Gray v. Netherland*, 99 F.3d at 161-64; *Meadows v. Legursky*, 904 F.2d at 908-10.  Such

an assessment requires the federal courts to consider the applicable state procedural bar rules

and, in particular, any potentially applicable exceptions to such rules.  *See Gray v. Netherland*,

518 U.S. at 161-62; *Meadows v. Legursky*, 904 F.2d at 908-10.  If further state review is not

available, then the petition as a whole should not be dismissed for lack of exhaustion, but

federal review of those claims that were not fully litigated in the state courts will ordinarily be

barred under the procedural default doctrine unless the petitioner shows "cause" for his

procedural default and "prejudice" resulting therefrom, or that a failure to review the merits

of the defaulted claim will result in the continued incarceration of an "actually innocent"

person.  *See Gray v. Netherland*, 518 U.S. at 161-62; *Coleman v. Thompson*, 501 U.S. at 731-

32, 735 n.1; *Mackall v. Angelone*, 131 F.3d at 450; *Buchanan v. Angelone*, 103 F.3d at 351;

*George v. Angelone*, 100 F.3d at 364-65 n. 14; *Gray v. Netherland*, 99 F.3d at 164; *Anthony

v. Schuppel*, 86 F. Supp. 2d at 535-38; *see also Calderon v. Thompson*, 523 U.S. 538, 559-66

(1998) (explicating actual innocence standard).

Under Maryland law, Walker was entitled to direct review of his convictions by the

Court of Special Appeals of Maryland as a matter of right and to further review by the Court

of Appeals of Maryland in that court's discretion.  *See* Md. Code Ann., Cts. & Jud. Proc. Art.,

§§ 12-201, 12-202, 12-203, 12-301, 12-302, 12-307, & 12-308 (2002 Repl. Vol.).  Under

Maryland law, Walker can collaterally attack his convictions pursuant to the provisions of

Maryland's Uniform Post Conviction Procedure Act.  *See* Md. Code Ann., Crim. Pro. Art., §§

15

7-101 et seq. (2001).[3]   As of October 1, 1995, the Maryland Uniform Post Conviction Procedure Act limited to one the number of petitions for post conviction relief that can be filed at the circuit court level with respect to a particular trial.  *See* 1995 Md. Laws, Ch. 110 (amending Article 27, Section 645A of the Maryland Code so as to provide for a single post conviction petition that may be reopened only "in the interests of justice"); *see also Stovall v. State*, 144 Md. App. 711, 800 A.2d 31 (holding, based on state law, that ineffective assistance of state post conviction counsel may be grounds for reopening post conviction proceedings), *cert. denied*, 371 Md. 71, 806 A.2d 681 (2002).

In addition to the one-petition limit, provisions of Maryland's Post Conviction Procedure Act stand as a possible bar to the presentation of claims that were raised or that could have been raised in earlier proceedings.  *See* Md. Code Ann., Crim. Pro. Art., § 7-106(a) (2001)(provision regarding finally litigated claims); *Hernandez v. State*, 108 Md. App. 354, 361-65, 672 A.2d 103, 107-08 (1996) (construing concept of finally litigated), *aff'd*, 344 Md. 721, 690 A.2d 526 (1997); Md. Code Ann., Crim. Pro. Art., § 7-106(b) (2001) (waiver provisions of Maryland's Post Conviction Procedure Act); *State v. Rose*, 345 Md. 238, 691 A.2d 1314 (1997) (construing waiver provisions); *Hunt v. State*, 345 Md. 122, 691 A.2d 1255 (construing waiver provisions and concept of finally litigated), *cert. denied*, 521 U.S. 1131 (1997); *Walker v. State*, 343 Md. 629, 684 A.2d 429 (1996) (construing waiver provisions); *Oken v. State*, 343 Md. 256, 268-74, 681 A.2d 30, 36-38 (1996) (same), *cert. denied*, 519 U.S.

---

[3]  Prior to October 1, 2001, the Maryland Post Conviction Act was codified in Article 27 of the Maryland Code, in Sections 645A through 645-I.

1079 (1997); *McElroy v. State*, 329 Md. 136, 617 A.2d 1068 (1993) (same); *Curtis v. State*, 284 Md. 132, 395 A.2d 464 (1978) (same).  In any event, ordinarily, and again subject to certain time constraints, *see* Md. Rule 8-204, review from the denial of post conviction relief is by leave to appeal only to the Court of Special Appeals of Maryland.  *See* Md. Code Ann., Crim. Pro. Art., § 7-109 (2001); *Sherman v. State*, 323 Md. 310, 311-12, 593 A.2d 670, 670-71 (1991) (confirming the absence of certiorari jurisdiction to grant post conviction relief where the Court of Special Appeals has simply denied an application for leave to appeal).  Where, however, the Court of Special Appeals issues a decision that constitutes something other than a discretionary determination that there should be no appeal, the Court of Appeals of Maryland has jurisdiction to review the case further.  *See Grayson v. State*, 354 Md. 1, 10-12, 728 A.2d 1280, 84-85 (1999).

Under the legal principles discussed above, Walker's petition need not be dismissed for failure to satisfy the requirements of 28 U.S.C. § 2254(b)-(c), as Walker appears to have raised his federal habeas claims in state court, and, in any event, no longer has direct review or state post conviction remedies available with respect to the claims he now raises in this Court.

## VI.  REASONS FOR DENYING THE WRIT

28 U.S.C. § 2254(a) authorizes a district court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Even so, "a federal habeas application can only be granted if it meets the requirements of 28 U.S.C. § 2254(d)," *Woodford v. Visciotti*, 537 U.S. 19, 21 (2002) (per

curiam), which provision states as follows:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. at 24.  In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor, speaking for a majority of the Court, had this to say:

> § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

18

*Id.* at 412-13.  Justice O'Connor also explained that "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412.  And, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409.

A.    **Walker's claims are time-barred.**

As an initial matter, it appears that Walker's claims, at a minimum Claims A and B, are time-barred under 28 U.S.C. § 2244(d)(1)-(2) (1996) and so should be dismissed. 28 U.S.C. § 2244(d) prescribes a one-year limitation period for the filing of a petition for writ of habeas corpus by a person in custody pursuant to a state court judgment.  The one-year limitation period runs from the latest of four dates, to wit:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the

19

Supreme Court and made retroactively applicable to cases on collateral review; or

      (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244 (d)(1). Nonetheless, the time during which a properly filed application for state post conviction or other collateral review is pending is not to be counted toward the one-year limitation period. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); *see also Duncan v. Walker*, 121 S. Ct. 2120, 2123-29 (2001) (explaining meaning of "application for State post conviction or other collateral review"); *Artuz v. Bennett*, 121 S. Ct. 361, 362-65 (2000) (explaining meaning of "properly filed").

      Walker's conviction became final on October 2, 1995, the date on which the Supreme Court denied Walker's petition for certiorari review of the Maryland Court of Appeals' affirmance of his convictions on direct appeal. *Walker v. Maryland,* 516 U.S. 898 (1995). *See Wade v. Robinson*, 327 F.3d 328, 330-33 (4th Cir.) (discussing when state court judgment becomes final), *cert. denied*, 124 S.Ct. 292 (2003). Thus, the starting date of the one-year limitation period in Walker's case is deemed to begin to run on the effective date of the AEDPA (April 24, 1996). *See Hernandez v. Caldwell*, 225 F.3d 435, 435-40 (4th Cir. 2000) (holding that limitations period of Section 2244(d) begins to run on April 25, 1996, and expires on April 24, 1997, for convictions which became final prior to April 24, 1996); *accord Brown v. Angelone*, 150 F.3d 370, 371-76 (4th Cir. 1998).

20

As the docket entries in Walker's case reflect, *see* Exhibit 1, when the period of limitations began to run in Walker's case, his first petition for post conviction relief was pending in the circuit court, *see* Exhibit 1 at # 385.  This petition was withdrawn without prejudice on September 9, 1996, *see id*. at # 415.  On April 10, 1997, Walker filed a second petition for post conviction relief, *see* Exhibit 1 at # 419, which likewise was withdrawn without prejudice, on  June 19, 2001, *see id*. at # 451.

On September 27, 2001, Walker filed a motion to reinstate his second petition for post conviction relief, Exhibit 20; *see* Exhibit 1 at # 454, which request was denied by the circuit court on May 31, 2002, *see* Exhibit 1 at 468. Walker also "resubmitted" a post conviction petition on October 16, 2001, Exhibit 1 at ## 456, 457, which he supplemented on October 31, 2001, *see id*. at # 458.  On May 31, 2002, however, Walker's "resubmitted" post conviction petition and corresponding supplement, Docket Entries items ##  456, 457, and 458, were stricken by the circuit court for failure to comply with Maryland Rule 1-321, *see* Exhibit 1 at # 467.

On May 15, 2002, Walker, through new counsel, filed an "Amended Petition for Post-Conviction Relief," *see* Exhibit 1 at # 465, which was supplemented on May 1, 2003, *see* Exhibit 1 at # 473.  These two filings were the subject of the circuit court's post conviction hearing on July 31, 2003,  *see* Exhibit 1 at # 479. Walker's post conviction proceedings terminated on May 10, 2006, when Walker failed to seek review by the U.S. Supreme Court of the Court of Appeals' decision upholding the post conviction court's ruling.  *See* Sup. Ct. R. 13 (providing that petition for writ of certiorari is timely filed if filed within 90 days after

21

entry of state court judgment).

The docket entries reflect that, after his convictions became final and the one-year statute of limitations began to run in his case, and prior to the filing of his petition for federal habeas relief on April 5, 2006, more than a year elapsed when state post conviction proceedings were not properly filed and pending in state court. No state post conviction proceedings were properly filed in Walker's case: from September 9, 1996, when the circuit court granted Walker's motion to withdraw his first post conviction petition until April 10, 1997, when Walker filed his second petition (7 months); and, from June 19, 2001, when the circuit court granted Walker's motion to withdraw his second post conviction petition until May 15, 2002, when Walker's counsel filed the third, "Amended Petition for Post-Conviction Relief," which, along with the supplement to that petition filed on May 1, 2003, was the subject of the post conviction hearing on July 31, 2003 (11 months).   The periods in which Walker had no properly filed post conviction proceedings pending in state court after the beginning of the one year limitations period total 18 months and, thus, exceed the one-year limitations period. This being the case, Walker's federal habeas petition was untimely filed under 28 U.S.C. § 2244(d).

Although Walker sought to reinstate his second petition for post conviction relief nunc pro tunc, by motion filed with the circuit court on September 27, 2001, *see* Exhibit 1 at # 454, reinstatement was denied by the circuit court and Walker's submission was not accepted by the court on May 31, 2002, Exhibit 1 at # 468.  Likewise,  notwithstanding that Walker also "resubmitted" a post conviction petition on October 16, 2001, Exhibit 1 at ## 456, 457, which

he supplemented on October 31, 2001, *see id*. at # 458, those filings were stricken by the circuit court on May 31, 2002 for failure to comply with the Maryland Rule 1-321, *see* Exhibit 1 at # 467.  Walker's petitions submitted in violation of the Maryland Rules on October 16 and 31, 2001, were not properly filed petitions for post conviction relief, nor did his request for leave to refile his second post conviction nunc pro tunc constitute properly filed state post conviction proceedings. Accordingly, the periods during which said petitions were pending in the state court do not toll the limitations period of 28 U.S.C. § 2244(d). *See Artuz v. Bennett*, 121 S. Ct. at 362-65 (an application is "properly filed" "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings").  Accordingly, Walker's federal habeas petition was untimely filed under 28 U.S.C. § 2244(d) and should be dismissed.

**B.**    **The Court of Appeals reasonably applied clearly established federal law  in concluding that Walker was properly denied post conviction relief.**

As his first basis for federal habeas relief, Walker claims that Maryland Court of Appeals unreasonably declined to apply *United States v. Cronic*, 466 U.S. 648 (1980), in addressing his post conviction claims of ineffective assistance of counsel. HC Petition at 4; HC Memorandum at 8-19.  Contrary to Walker's assertion, the Court of Appeals thoroughly addressed and correctly applied controlling case authority of the Supreme Court  in concluding that the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984),  and not *Cronic,* applied to review of Walker's post conviction ineffective assistance of counsel claims.

In rejecting Walker's claim that prejudice should be presumed in his case under *Cronic*, the Maryland Court of Appeals held as follows:

23

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel and applies to the states through the Due Process Clause of the Fourteenth Amendment.[5] *See Gideon v. Wainwright,* 327 U.S. 335, 342, 83 S. Ct. 792, 795-96, 9 L. Ed. 2d 799 (1963). It is beyond question that the right to counsel is the right to effective assistance of counsel. *See Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063.

In order to assess the adequacy of counsel's assistance under the Sixth Amendment, ordinarily we apply the two-part test enunciated by the Supreme Court in *Strickland,* which requires that a defendant show that counsel's representation was deficient, *i.e.,* that it fell below an objective standard of reasonableness, and that any deficiency in counsel's performance was prejudicial. *Id.* at 687-88, 104 S. Ct. at 2064; *see Florida v. Nixon,* 543 U.S. 175, 188-89, 125 S. Ct. 551, 561-62, 160 L. Ed. 565 (2004); *Bowers v. State,* 320 Md. 416, 424-25, 578 A.2d 734, 739 (1990). Prejudice requires a showing that counsel's errors were so egregious that they deprived the defendant of a fair trial—a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. We have framed the test for prejudice under *Strickland* as requiring the petitioner to show that there is a substantial possibility that the outcome of the proceeding would have been different. *Bowers,* 320 Md. at 426-27, 578 A.2d at 738.

In deciding a petitioner's ineffective assistance claim under *Strickland,* "judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. When a court decides an ineffective assistance of counsel claim, it must judge the reasonableness of counsel's conduct on the facts of the particular case, viewed from the time of counsel's conduct. *Id.* at 690, 104 S. Ct. at 2066. Further, the court may determine the reasonableness of counsel's actions in accordance with petitioner's statements and actions because counsel's conduct typically is based on "informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* at 691, 104 S. Ct. at 2066.

In *United States v. Cronic,* 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), decided the same day as *Strickland,* the Supreme Court established that certain deficient performances of counsel justified a per se presumption of ineffectiveness under the Sixth Amendment. *See id.* at 658-659, 104 S. Ct. at 2046. The Court identified three situations implicating the right to counsel that

24

involved circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658, 104 S. Ct. at 2046-47. The first situation was where the accused was completely denied counsel. *Id.* at 659, 104 S. Ct. at 2047. Complete denial of counsel includes, for example, "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25, 104 S. Ct. at 2047 n. 25. The second situation warranting a similar presumption of prejudice was "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing" because this results in an "adversary process itself [that is] presumptively unreliable." *Id.* The final situation was in cases similar to *Powell v. Alabama,* 287 U.S. 45, 53 S. Ct. *55,* 77 L. Ed. 158 (1932), where the accused faces circumstances in which it is not likely that any attorney could provide effective assistance.[6] *Id.* at 659-661, 104 S. Ct. at 2047-48. With the exception of these three situations, a defendant must articulate "how specific errors of counsel undermined the reliability of the finding of guilt," *i.e.,* the defendant must prove actual prejudice. *See Cronic,* 466 U.S. at 659 n.26, 104 S. Ct. at 2047 n. 26.

Petitioner argues that his claim fits within the second exception identified in *Cronic* because his trial counsel, although present in the courtroom, failed to subject the State's case against Walker to "meaningful adversarial testing," thereby warranting a presumption of prejudice. We disagree. Since *Cronic* was decided, the Supreme Court has made clear that the *Cronic* exception to the general rule requiring proof of prejudice based on deficient performance is a very narrow exception, and that for the exception to apply, the "[attorney's] failure must be complete." *Florida v. Nixon,* 543 U.S. 175, 190, 125 S. Ct. 551, 562, 160 L. Ed. 2d565 (2004) (quoting *Bell v. Cone,* 535 U.S. 685, 696-697, 122 S. Ct. 1843, 1851, 152 L. Ed. 2d 914 (2002)).

In *Bell v. Cone,* 535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002), a death penalty case before the Court on review of a grant of the writ of habeas corpus by the United States Court of Appeals for the Sixth Circuit, the Court reversed, holding that the *Strickland* test rather than *Cronic* exception applied in analyzing petitioner's claim of ineffective assistance of counsel at his sentencing hearing. *Id.* Petitioner argued that in the sentencing proceeding, his counsel failed to "mount some case for life" after the State introduced evidence in the sentencing hearing and made closing argument. *Id.* at 696, 122 S. Ct. at 1851. The Court rejected his argument, explaining the applicability of *Cronic*

as follows:

> "When we spoke in *Cronic* of the possibility of presuming prejudice based on the attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said 'if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.' Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, the difference is not of degree but of kind."

*Id.* at 696, 122 S. Ct. at 1851 (citations omitted). In analyzing defense counsel's decision to waive summation, the Court noted that considering the options available to counsel, "[n]either option... [s]o clearly outweighs the other that it was objectively unreasonable for the Tennessee Court of Appeals to deem counsel's choice to waive argument a tactical decision about which competent lawyers might disagree." *Id.* at 702, 122 S. Ct. at 1854. The Court found that because defense counsel failed to challenge specific aspects of the State's case rather than entirely fail "to subject the [State's] case to meaningful adversarial testing," *Strickland* provides the proper framework for reviewing the defendant's ineffective assistance of counsel claim. *See id.* at 697-98, 122 S. Ct. at 1851-52.

In *Florida v. Nixon,* 543 U.S. 175, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004), the Supreme Court again emphasized the limited availability of the *Cronic* exception. The Court reiterated as follows:

> *"Cronic* recognized a narrow exception to *Strickland's* holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense. *Cronic* instructed that a presumption of prejudice would be in order in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.' The Court elaborated: '[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that

26

makes the adversary process itself presumptively unreliable.' We illustrated just how infrequently the 'surrounding circumstances [will] justify a presumption of ineffectiveness' in *Cronic* itself. In that case, we reversed a Court of Appeals ruling that ranked as prejudicially inadequate the performance of an inexperienced, under-prepared attorney in a complex mail fraud trial."

*Id.* at 190, 125 S. Ct. at 562 (citations omitted).

This Court has recognized the narrow reach of *Cronic* in analyzing ineffective assistance of counsel claims. *See e.g., Redman v. State,* 363 Md. 298, 311, 768 A.2d 656, 663 (2001). In *Redman,* we embraced the following interpretation of *Cronic,* as stated by the United States Court of Appeals for the First Circuit:

"In our view, the Court's language in *Cronic* was driven by the recognition that certain types of conduct are in general so antithetical to effective assistance—for example, lawyers who leave the courtroom for long stretches of time during trial are unlikely to be stellar advocates in any matter—that a case-by-case analysis simply is not worth the cost of protracted litigation. No matter what the facts of a given case may be, this sort of conduct will almost always result in prejudice. But attorney errors particular to the facts of an individual case are qualitatively different. Virtually by definition, such errors 'cannot be classified according to likelihood of causing prejudice' or 'defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid.' Consequently, the Court has declined to accord presumptively prejudicial status to them."

*Redman,* 363 Md. at 311-12, 768 A.2d at 663 (quoting *Scarpa v. DuBois,* 38 F.3d 1, 12-13 (1st Cir. 1994)) (citations omitted).

Similarly, the Court of Special Appeals rejected Walker's argument that prejudice should be presumed under *Cronic*. The court reasoned as follows:

"The facts in this case are more similar to the facts of *Warner [v. Ford,* 752 F.2d 622 (11th Cir. 1985)] than the facts of *Martin [v.*

27

> *Rose,* 744 F.2d 1245, 1250-51 (6th Cir. 1984)].  Though Walker
> professed his innocence before trial, and continues to deny that he
> was guilty of the charges brought against him, the documentary
> and  testimonial  evidence  against  him  was  'overwhelming.'
> [Petitioner] was one of three co-defendants, and though his own
> attorney did not actively participate in trial, counsel for Ms. Hall
> did challenge the case presented by the State.  Finally, [defense
> counsel] had six months to prepare for the trial.  He received
> 'voluminous' discovery, and discussed the case with his client
> several times prior to [petitioner's] flight from the country.
> Furthermore, [defense counsel] testified that he was prepared to
> actively represent [petitioner] at trial, but chose not to deliberately
> because of [petitioner's] absence. Under the reasoning of the
> Eleventh Circuit set forth in *Warner,* prejudice should not be
> presumed in this case."

*Walker v. State,* 161 Md. App. 253,270-71, 868 A.2d 898, 908 (2005).  In
addition, the court pointed out the practical effect of applying the *Cronic*
standard as essentially abolishing trial *in absentia.*  The court noted as follows:

> "We fear that if we allow a new trial in this case, it will open the
> door for criminal defendants to engineer an 'automatic' new trial
> by failing to appear for trial.  If defense counsel, with or without
> consent, then chooses not to participate, and if the defendant is not
> successful on direct appeal, the defendant will obtain a new trial
> on ineffective assistance of counsel grounds.  We decline to open
> the door for such manipulation of the system."

*Id.* at 273, 868 A.2d at 910.  We agree with the Court of Special Appeals and
also reject petitioner's argument.  Defendants would have a "foolproof defense"
for a new trial if prejudice were presumed in every case in which the defense
counsel with an absent client elects to remain silent or participate minimally.  *Cf
Toomey v. Bunnell,* 898 F.2d 741, 744 n. 2 (9th Cir. 1989); *Harding v. Lewis,*
834 F.2d 853, 859 (9th Cir. 1987).

Courts around the country have interpreted *Cronic* very narrowly, thereby
requiring a showing of actual prejudice rather than presuming prejudice.  *See,
e.g., Moss v. Hofbauer,* 286 F.3d 851, 862 (6th Cir. 2002) (refusing to apply

*Cronic* where defense counsel failed to make an opening statement, cross-examine two witnesses, make objections, and call defense witnesses, because the omitted conduct was "not the equivalent of being physically or mentally absent" from the courtroom); *Chadwick v. Green,* 740 F.2d 897, 901 (11th Cir. 1984) (holding that "when *Cronic* and *[Strickland]* are read in conjunction, it becomes evident that *Cronic's* presumption of prejudice applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all"). *See also Turrentine v. Mullin,* 390 F.3d 1181, 1207-09 (10th Cir. 2004); *James v. Harrison,* 389 F.3d 450, 454-56 (4th Cir. 2004); *Fink v. Lockhart,* 823 F.2d 204, 206 (8th Cir. 1987); *United States v. Sanchez,* 790 F.2d 245, 254 (2d Cir.), *cert. denied,* 479 U.S. 989, 107 S. Ct. 584, 93 L. Ed. 2d 587 (1986); *State v. Davlin,* 658 N.W.2d 1,13 (Neb. 2003).

In the instant case, as a result of Walker's and Lee's failure to appear for trial, defense counsel found himself in the unenviable position of having to represent absent defendants. As a trial strategy, he decided essentially to remain silent, to protect the record as best as he could under the circumstances, to participate minimally, and to argue jury nullification—the latter of which the Circuit Court did not allow. Under the circumstances presented herein, the strategy counsel employed was not such that it falls within the narrow exception to warrant a presumption of prejudice. Defense counsel's conduct was not "so antithetical to effective assistance" that the *Cronic* presumption of prejudice should apply. *See Scarpa,* 38 F.3d at 12. Moreover, his conduct did not amount to the complete failure of representation at every aspect of the trial proceeding, as contemplated by the *Bell* Court. *See Bell,* 535 U.S. at 697, 122 S. Ct. at 1851.

In a motions hearing on January 18, 1993, defense counsel argued forcefully that Walker did not "acquiesce" to be tried *in absentia.* Prior to the beginning of Walker's trial, on January 19, 1993, defense counsel, once again, argued vehemently that trial of Walker *in absentia* was unfair and in violation of the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights, and announced that he would not "in any way participate in the trial." Counsel characterized his decision not to participate in the proceedings as a strategic choice because he "unhesitatingly believed that [his clients] would not want [him] in any way to participate further at this trial," and that he could not participate in the trial "by cross-examining witnesses, without having the benefit of [his clients next to him]" to obtain information and

engage in consultations.

The following exchange occurred between Walker's post-conviction counsel and defense counsel at Walker's post-conviction proceeding on July 31, 2003 regarding defense counsel's trial representation of Walker:

"[POST CONVICTION COUNSEL]: You have put on the record that you believe that your clients would not want you in any way to participate.

[DEFENSE COUNSEL]: That is correct.

[POST CONVICTION COUNSEL]: That was done though, was it not, sir, without any consultation with Mr. Walker?

[DEFENSE COUNSEL]: That is correct.

[POST CONVICTION COUNSEL]: And without any consultation with, since you had two clients at that time, Ms. Walker.

[DEFENSE COUNSEL]: That is correct.

[POST CONVICTION COUNSEL]: That was your opinion.

[DEFENSE COUNSEL]: Absolutely.

[POST CONVICTION COUNSEL]: But your opinion was not based upon legal research as to what your duty was as opposed to what you thought you should do, correct?

[DEFENSE COUNSEL]: My opinion on that specific question was [based on] my conversations with my clients and how they viewed the trial, at least to that statement, that I believe that my clients would not want me to participate.  That was my own belief.

[POST CONVICTION COUNSEL]: That was because you had, had discussions prior to trial.  Mr. Walker believed that this was,

in some respects a racist proceeding against him.  He had an interracial marriage, correct?

[DEFENSE COUNSEL]: That is correct:

[POST CONVICTION COUNSEL]: And he had no great love for [the prosecutor] correct?

[DEFENSE COUNSEL]: That was an understatement, yes."

This post-conviction colloquy further supports the conclusion that defense counsel's minimal participation was a strategic decision, borne out of unusual circumstances, rather than a constructive denial of counsel, which would require a presumption of prejudice under *Cronic*. *See Martin v. McOtter*, 796 F.2d 813, 820 (5th Cir. 1986) (concluding "that counsel's decision to forego argument at the sentencing phase of Martin's trial did not constitute a constructive denial of counsel such as to render a showing of *Strickland* prejudice unnecessary"); *Vickers v. State,* 898 S.W.2d 26, 28 (Ark. 1995) (recognizing that "matters of trial tactics and strategy, which can be matters of endless debate by experienced advocates, are not grounds for post-conviction relief").  Defense counsel further testified at the post-conviction proceeding that he had been Walker's counsel for approximately six months, had conducted "voluminous discovery" and had "many, many conversations" with Walker before Walker absconded.  Counsel was prepared to actively represent Walker, and once Walker absconded, counsel's decisions were grounded in what he thought his client would want, based on his interactions with him prior to trial.

Petitioner directs our attention to a few cases in which courts have held that the attorney's refusal to participate in the trial justified application of a presumption of prejudice under the Sixth Amendment.  *See United States v. Swanson,* 943 F.2d 1070 (9th Cir. 1991); *Martin* v. *Rose,* 744 F.2d 1245 (6th Cir. 1984); *State v. Harvey,* 692 S.W.2d 290 (Mo. 1985).  We find these cases distinguishable from the case *sub judice.*

In *United States v. Swanson,* 943 F.2d 1070 (9th Cir. 1991), the defendant was charged with armed robbery. Defense counsel acknowledged his client's guilt in closing argument, conceding the element of intimidation and that his client was the perpetrator of the offense.  *Id.* at 1074.  Furthermore, he informed

31

the jury repeatedly that the defendant's guilt beyond a reasonable doubt could not be questioned. *See id.* at 1076-1078. The United States Court of Appeals for the Ninth Circuit viewed this conduct as constructive denial of counsel during a critical stage of the proceeding, thereby warranting a presumption of prejudice under *Cronic. See id.* at 1075-76. The court reasoned that when the defense attorney argued to the jury that no reasonable doubt existed, the defense "shouldered part of the government's burden of persuasion." The court pointed out that the government failed to identify any strategy that could justify defense counsel's "betrayal of his client." *Id.* at 1075. Here, Walker's attorney determined that the best strategy was not to actively participate. He neither conceded his client's guilt nor shouldered the State's burden of proof.

In *State v. Harvey,* 692 S.W.2d 290 (Mo. 1985), prior to jury selection, defense counsel requested a continuance, noting that he was "totally unprepared" to begin the defense of his client in a capital murder case. *Id.* at 291. Upon the court's denial of his request, defense counsel announced his intention to only sit at the counsel table, and not participate, asserting that he was unprepared and physically exhausted because of his work in another capital murder case. *Id.* At both trial and sentencing, defense counsel remained almost entirely mute, participating only in voir dire and filing various post-trial motions. *Id.* at 293.

In the sentencing phase, counsel presented no evidence as to mitigation. *Id.* at 292-93. On direct appeal, the Missouri Supreme Court rejected the contention that defense counsel's minimal participation in the proceedings was a strategic choice, consented to by the defendant, and thus, held that the defendant was constructively denied counsel within the meaning of *Cronic. Id.* at 293. An important factor in the court's decision was that the defendant was present during the trial, and the trial court had not inquired as to whether the defendant knowingly and voluntarily was relinquishing his right to effective assistance of counsel. *See id.* at 293.

In the ease *sub judice,* trial counsel had represented Walker for six months, conducted discovery, and was prepared to put on Walker's defense. It was the defendant who impeded this representation by failing to appear for trial. Furthermore, in *Harvey,* defense counsel did not discuss this strategy of non-representation with his client, while in the instant case, defense counsel assumed attorney silence was the strategy Walker would want him to employ under the circumstances. In sum, Walker's attorney made a strategic calculation in an

unusual situation, which is a far cry from Harvey's counsel, who was unprepared and searching for a way out of the case.

In *Martin v. Rose,* 744 F.2d 1245 (6th Cir. 1984), the defendant was indicted for the offenses of criminal sexual conduct in the first degree, incest, sodomy, and crimes against nature, arising from an incident involving him and his two minor stepdaughters. *Id.* at 1247. The trial court denied defense counsel's motion to dismiss and motion for a continuance—in which he alleged that he was unprepared to the try case. *Id.* Thereafter, defense counsel, without fully explaining the situation to his client or obtaining his client's consent, did not cross-examine any state witnesses, make any objections, call any witnesses for the defense, make any closing argument, or object to any part of the court's charge to the jury. *Id.* On appeal from denial of habeas relief, the United States Court of Appeals for the Sixth Circuit held that this "lack of participation deprived Martin of effective assistance of counsel at trial as thoroughly as if [counsel] had been absent," warranting a *Cronic* presumption of prejudice. *Id.* at 1250-51. The court held that even though counsel's actions were unquestionably trial strategy, they did not constitute sound trial strategy. *Id.* at 1249. The court reasoned that: Martin had denied participation in the offense; he had a strong defense that he could present; he had no criminal record and could take the stand and testify on his own behalf, and that the State's case, based solely on the step-daughters' testimony, could have been challenged by cross-examination. *Id.* at 1250-51.

In the instant case, Walker's post-conviction counsel does not allege which arguments the jury did not hear and which evidence it did not see by trial counsel's failure to participate more fully in Walker's trial. In *Martin,* attorney silence was an unreasonable trial tactic for a client on trial for criminal sexual conduct because had Martin's attorney participated, "Martin could have testified that he did not commit the crimes with which he was charged ... [and] [e]ven if Martin had not testified, the girls' testimony could have been subjected to cross-examination or questioned in final argument." *Id.* at 1250-51. Unlike, *Martin,* the case against Walker was built upon substantial documentary and testimonial evidence. Here, the record reflects no defense Walker could have asserted if counsel had behaved differently.

Moreover, in the instant case, defense counsel argued repeatedly to the Circuit Court that trial *in absentia* was unconstitutional, cited rules to the Court,

attended bench conferences during the trial, sought to make a closing argument, and responded to the Court's inquiries regarding admission of State exhibits. As the State points out, counsel for codefendant Hall challenged the State's evidence in front of the jury, which was to the benefit of all three defendants.

We note that in the cases cited by petitioner, each defendant was present at trial and never waived his right to effective assistance of counsel. Even if a defendant absconds prior to trial, the right to effective assistance of counsel is not waived automatically. As petitioner points out, it is well-established that a defendant's waiver of the Sixth Amendment right to counsel must be knowing and intelligent. *See Faretta v. California,* 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975); *State v. Renshaw*, 276 Md. 259, 265-66, 347 A.2d 219, 224 (1975). By failing to appear, however, the defendant puts the attorney in the difficult position of deciding how best to put on a defense if a continuance is denied and the trial judge proceeds *in absentia.* Whether non-participation or silence is a reasonable strategy should depend upon the circumstances of each case: *See Warner v. Ford,* 752 F.2d 622, 625 (11th Cir. 1985).

"Silent strategy" is the phrase often used to describe an attorney's decision either not to participate at trial or to participate minimally. *Cf Warner,* 752 F.2d at 625; *Walker I,* 338 Md. at 261, 658 A.2d at 243; Keith Cunningham-Parmeter, *Dreaming of Effective Assistance,* 76 Temp. L. Rev. 827, 869-875 (2003). Some courts have recognized an attorney's decision to remain silent as a legitimate, strategic choice worthy of deference under *Strickland. See generally United States v. Sanchez,* 790 F.2d 245 (2nd Cir.), *cert. denied,* 479 U.S. 989, 107 S. Ct. 584, 93 L. Ed. 2d 587 (1986) (applying *Strickland* to defendant's ineffective assistance of counsel claim where defendant had absconded prior to trial and trial counsel's participation was limited to objection to trial *in absentia* and a flight instruction and to moving for judgment of acquittal); *Warner v. Ford,* 752 F.2d 622 (11th Cir. 1985) (applying *Strickland* to defendant's ineffective assistance of counsel claim, where trial counsel's participation was limited to a motion for a directed verdict, a request for a mistrial, and a recommendation that his client not take the witness stand). *See also Martin v. McCotter,* 796 F.2d 813 (5th Cir. 1986) (applying *Strickland* to defendant's ineffective assistance of counsel claim, where trial counsel remained silent at the sentencing phase of his client's trial).

In *Warner v. Ford,* 752 F.2d 622 (11th Cir. 1985), the United States Court of Appeals for the Eleventh Circuit considered a claim of ineffective assistance of counsel involving defense counsel's silence during trial in the face of overwhelming evidence of guilt. *Id.* at 625. Two co-defendants were tried in the same proceeding with Warner, and Warner was convicted of four counts of armed robbery. *Id.* at 623-24. Warner's attorney did not participate in the trial, except to move for a directed verdict on one count, request a mistrial three times, and recommend that his client not take the stand when his client was called by his co-defendants to testify in their defenses. *Id.* at 624. On appeal from the District Court's denial of habeas, the Eleventh Circuit applied the *Strickland* analysis to Warner's claim of ineffective assistance of counsel, deciding that a case-by-case inquiry is more suitable than a presumption of prejudice, when the "silent strategy" is at issue. *Id.* at 625. The Eleventh Circuit explained as follows:

> "Silence can constitute trial strategy. Whether that strategy is so defective as to negate the need for a showing of prejudice to establish ineffective assistance of counsel must be judged on a case-by-case basis. *[Strickland]* has established that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance.' Thus, in order for a petitioner with an ineffective assistance claim to prevail over his former counsel's assertion of strategy, he must 'overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id.* at 625 (citations omitted). The *Warner* Court concluded that defense counsel's representation of Warner was not so defective as to entitle Warner to relief without any showing that his attorney's conduct prejudiced him. *Id.*

In *United States v. Sanchez,* 790 F.2d 245 (2d Cir.), *cert. denied,* 479 U.S. 989, 107 S. Ct. 584, 93 L. Ed. 2d 587 (1986), Sanchez did not appear for trial on the scheduled date. His attorney, the co-defendant, and the co-defendant's attorney were present, and the trial proceeded in Sanchez's absence. *Id.* at 248. Defense counsel engaged in "limited defense activity," consisting of objecting to the trial itself, a request for a flight instruction, and a motion for judgment of acquittal. *Id.* at 248, 253. The jury returned a verdict of guilty against Sanchez on two counts, and Sanchez claimed ineffective assistance of counsel. *Id.* at

35

248.

The United States Court of Appeals for the Second Circuit rejected Sanchez's ineffective assistance of counsel claim, refusing to invoke *Cronic* where a "defendant by his own obstructive conduct precludes his counsel from pursuing an intelligent [and] active defense." *Id.* at 254. The Second Circuit recognized the silent strategy as appropriate in some cases, noting as follows:

"Here, there is no evidence that Sanchez made any effort to communicate with or otherwise cooperate with his attorney. There is no evidence that Sanchez consulted with his attorney regarding his decision not to attend the trial, and not to be available during the weeks preceding trial. Where an attorney is confronted with such a client, whose uncooperativeness precludes any reasonable basis for an active defense, the strategy of silence—perhaps in hopes that the government will produce insufficient evidence or that the government or court will commit reversible error—may actually constitute a defense strategy. Certainly, the right to counsel does not impose upon a defense attorney a duty unilaterally to investigate and find evidence or to pursue a fishing expedition by cross-examination, or to present opening or closing remarks on the basis of no helpful information, or to object without purpose, on behalf of an uncooperative and unavailable client."

*Id.* at 253 (citations omitted).

Simply because "silence" is the product of trial strategy, however, does not insulate attorney conduct from review. Strategic decisions must nonetheless be supported by reasonable professional judgment. *See Strickland v. Washington,* 466 U.S. 686, 690, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984). Whether "silence" as a strategy is reasonable is to be determined on a case by case basis, under the standards set forth in *Strickland. See id.* at 691, 104 S. Ct. at 2066 (noting that "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on the information supplied by the defendant").

We hold that the post-conviction court did not err in rejecting the *Cronic* standard in this case and that *Strickland v. Washington* provides the proper framework for review of Walker's ineffective assistance of counsel claim under the Sixth Amendment.

_____

[5]The Sixth Amendment provides, in pertinent part, as follows:
"In all criminal prosecutions, the accused shall enjoy the right... to have the Assistance of Counsel for his defense."

[6]In *Powell v. Alabama,* 287 U.S. 45, 53 S. Ct. 55, 77 L Ed. 158 (1932), the defendants had been indicted for rape. The trial judge appointed "all members of the bar" to represent them for the purposes of arraignment defendants shortly before the trial. *Id.* at 56, 53 S. Ct. at 59. An out-of-state attorney appeared on the day of the trial, wishing to represent the defendants, but requested a continuance for more time to prepare the defendants' case and to learn the local procedure. The trial court decided that the out-of-state attorney would represent the defendants immediately with whatever help the local bar could provide. Under these circumstances, the Court did not examine the counsel's actual representation of his clients at trial, but deemed the trial inherently unfair, presuming prejudice without any further inquiry. *See id.* at 58, 53 S. Ct. at 60. The Court held in *Powell* that the failure of the trial court to give the defendants a reasonable time and opportunity to obtain adequate counsel violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 71, 53 S. Ct. at 65.

Exhibit 34 at 10-28; *Walker v. State*, 391 Md. 233, 245-60, 892 A.2d 547, 554-63 (2006).

Contrary to Walker's contention in this Court, the Court of Appeals' ruling rejecting Walker's claim that *Cronic* rather than *Strickland* applied to review of his ineffective assistance of counsel claims, constitutes a reasonable application of federal law and should remain undisturbed under Section 2254(d). That Walker is not entitled to federal habeas relief is clear given the Maryland Court of Appeals' recognition and correct application of the decisions of the Supreme Court, including the Supreme Court's rulings in *Strickland v.*

37

*Washington*, 466 U.S. 668 (1984)*, United States v. Cronic,* 466 U.S. 648 (1984), as well as *Florida v. Nixon*, 543 U.S. 175 (2004), *Bell v. Cone*, 535 U.S. 685 (2002), and *Gideon v. Wainwright,* 327 U.S. 335 (1963). Accordingly, the state court's ruling constitutes a reasonable application of federal law that survives scrutiny under Section 2254(d). Walker states no basis for federal habeas relief.

**C.    The Court of Appeals reasonably applied clearly established federal law in concluding that Walker was properly tried *in absentia*.**

_____As his second basis for federal habeas relief, Walker claims that, on direct appeal, the Maryland Court of Appeals unreasonably determined facts and unreasonably applied Supreme Court case law in holding that Walker properly was tried *in absentia* upon his failure to appear for trial.  HC Petition at 4; HC Memorandum at 20-24. As to this claim also, Walker states no grounds for federal habeas relief.

Walker's case was joined with the cases of his co-conspirators, Patricia Annette Lee, his wife, and Anna L. Hall, Lee's mother. When the cases were called for trial, Walker and Lee did not appear.  *See* Exhibit 18 at 1-5; *Walker and Lee v. State*, 338 Md. at 255-56, 658 A.2d at 240. Consequently, the trial judge, the Honorable Ann S. Harrington, conducted a hearing concerning the absence of Walker and Lee.  *Id.*  Based upon a colloquy with their counsel, attorney Greenberg, Judge Harrington "found as a fact" that Walker and Lee had been notified of the trial date and location, and she ruled that the trial of Walker, Lee, and Hall would proceed, with Walker and Lee being tried *in absentia*.  *Id.*  The jury was then selected and sworn.  *Id.*

38

On direct appeal, Walker and Lee relied upon Maryland Rule 4-231 and *Barnett v. State*, 307 Md. 194, 512 A.2d 1071 (1986), in support of their claim that they were improperly tried *in absentia*.  Walker and Lee also claimed that their trial *in absentia* denied them their right to due process under the Constitution. Exhibit 16 at 17-27.  In denying Walker's and Lee's claims that they were improperly tried *in absentia*, the Maryland Court of Appeals ruled as follows:

> Walker and Lee assert that the *Barnett* Court misconstrued Maryland Rule 4-231 and that Barnett should therefore be overruled.  They also claim that this case is distinguishable, based on their attorney's non-participation at trial.  We address these arguments separately.

> ### A.

> Walker and Lee argue that *Barnett* should be overruled, on the basis that this Court misconstrued Rule 4-231(c).  They contend that, contrary to our holding in *Barnett,* this Rule permits trial in absentia only when a defendant absconds after trial has commenced.

> Rule 4-231 concerns the defendant's right to be present at trial. Section (c) of the rule applies to the waiver of this right:

> > (c)    **Waiver of Right to Be Present. --** The right to be present under section (b) of this Rule is waived by a defendant:
> > (1)    who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or
> > (2)    who engages in conduct that justifies exclusion from the courtroom, or

> > (3)    who, personally or through counsel, agrees to or acquiesces in being absent.

The appellants suggest that this Rule was modeled after Federal Rule of Criminal Procedure 43, and that our interpretation of the Maryland provision should therefore be guided by federal court pronouncements regarding the Federal Rule.[4] In *Crosby v. United States*, ___U.S.___, 113 S. Ct. 748, 122 L. Ed. 2d 25 (1993), decided after *Barnett,* the United States Supreme Court held that Federal Rule 43 does not permit a trial in absentia when the defendant absconds prior to the commencement of trial. Walker and Lee argue that this interpretation undermines the continued vitality of *Barnett.*

As the appellants concede, the Supreme Court's interpretation of a federal rule does not bind this Court in interpreting a Maryland rule, even where our rule is modeled after its federal counterpart. In this instance, even the persuasive force of the Supreme Court's decision is minimal, as that Court relied on aspects of the Federal Rule which are not present in Rule 4-231.

In *Crosby,* the defendant was arraigned and attended pre-trial proceedings, but he did not appear for trial. The Supreme Court held that Rule 43(b)(l), which provides that the right to be present is waived if the defendant absconds "after the trial has commenced," should be taken literally. Thus, where a defendant disappears before trial, as Crosby did, Rule 43(b)(1) does not authorize trial in absentia. *Id.* at ___, 113 S. Ct. at 752-53. Noting the express mandate in Rule 43(a) that the "defendant shall be present . . . at every stage of the trial. . . except as otherwise provided by this rule," and finding no provision in the Rule that would permit a trial in absentia in the circumstances before it, the Court held that the defendant's conviction must be reversed. *Id.* at   , 113 S. Ct. at 753.

This reasoning is inapposite to our interpretation of Maryland Rule 4-231(c). Rule 4-231(c)(3), which has no analog in the federal rule, permits the trial court to find a waiver of the right to be present whenever the defendant, "personally or through counsel, agrees to or acquiesces in being absent." We relied on this provision to find a waiver of common-law rights in *Barnett.* 307 Md. at 204, 512 A.2d at 1076. We see nothing in *Crosby* that invites a reexamination of that conclusion.

### B.

Walker and Lee argue that, even if *Barnett* were correctly decided, this

case is distinguishable, because Barnett's counsel took an active role at trial, whereas their attorney refused to participate. To support this point, they direct our attention to decisions from other jurisdictions where convictions were reversed because the trial, or some portion of it, took place with both the defendant and counsel out of the courtroom. *See, e.g.*, *Diekhoff v.* State, 555 N.E.2d 477 (Ind. 1990); *Wagstaff v. Barnes,* 802 P.2d 774 (Utah Ct. App. 1990). This is not such a case. Walker and Lee had a lawyer representing them at trial. Greenberg expressly stated that his non-participation served the wishes and the best interests of his clients. While the appellants assert that this "silent strategy" constituted ineffective assistance, an argument we address next, we will not ignore the fact that there was a lawyer in the courtroom on the appellants' behalf.

For the foregoing reasons, we conclude that the trial court did not err in permitting this case to proceed without Walker and Lee present.

_____

[3] The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *See Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965) (holding that the Confrontation Clause is applicable in state prosecutions). The same guarantee appears in Article 21 of the Maryland Declaration of Rights.

[4] The analogous section of the Federal Rule is Rule 43(b), which provides as follows:

> (b)   CONTINUED   PRESENCE   NOT REQUIRED.  The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,
>
>> (1)     is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain

41

> during the trial), or
>
> (2)    after being warned by the court that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

Exhibit 18 at 6-9; *Walker and Lee v. State*, 338 Md. at 258-61, 658 A.2d at 241-42.

Under Section 2254(e)(1), the state court's finding, predicated on state law, that Walker was properly tried *in absentia*, is not to be second-guessed by this Court. *Rose v. Hodges*, 423 U.S. 19, 21 (1975). Moreover, contrary to Walker's contention, the Court of Appeals' ruling rejecting his claim that he was improperly tried *in absentia* constitutes a reasonable application of federal law and should remain undisturbed under Section 2254(d). The Maryland Court of Appeals correctly  applied decisions of the Supreme Court, including the Supreme Court's rulings in *Crosby v. United States*, 506 U.S. 255 (1993), and *Pointer v. Texas*, 380 U.S. 400 (1965), *see also Diaz v. United States*, 223 U.S. 442 (1912). Accordingly, the state court's ruling constitutes a reasonable application of federal law that survive scrutiny under Section 2254(d). Walker states no basis for federal habeas relief.

**D.     Walker's claim regarding the state court's denial of habeas relief in connection with his sentences is not cognizable and is procedurally defaulted in any event.**

As his final basis for federal habeas relief, Walker alleges that the Circuit Court for Baltimore City unreasonably applied Supreme Court case law in denying his request for state habeas corpus relief in connection with his claim that his sentence was illegal. HC Petition at 5; HC Memorandum at 24-28. Walker's final claim is not cognizable, and, in addition to being

without merit, is procedurally defaulted in any event.   Accordingly, Walker states no grounds for federal habeas relief.

On April 16, 1998, Walker sought state habeas corpus relief in the Circuit Court for Baltimore City, Case No. 24-H-98-104900. *See* Exhibit 35 at 3.  Walker was granted relief and released on November 5, 1998, *see* Exhibit 35 at 3, after which the State promptly filed a Motion to Alter or Amend Judgment and Stay Proceedings, *see id.*  Following the Maryland Court of Appeals' decision reversing the grant of habeas relief to Walker's co-defendant Lee, *MCI v. Lee*, 362 Md. 502, 766 A.2d 80 (2001), the circuit court , on April 10, 2001, granted the State's Motion to Alter or Amend, vacated its order granting Walker habeas relief, and denied and dismissed Walker's petition for habeas relief.  Exhibit 39; *see also*  Exhibit 35 at 4.  Walker sought reconsideration of the circuit court's ruling on May 9, 2001, *see* Exhibit 35 at 4, which was denied by the circuit court in an Order filed on March  4, 2002, and Corrected Order filed on March 5, 2002, *see* Exhibit 35 at 6.

Walker subsequently filed a Supplemental Motion for Reconsideration, which was denied by the circuit court on June 27, 2002, *see* Exhibit 35 at 6.  Walker then noted an appeal from the circuit court's denial of his supplemental motion for reconsideration on July 22, 2002, *see* Exhibit 35 at 7, raising solely the issue of whether the circuit court abused its discretion in denying his motion for reconsideration of the denial of habeas relief.  *See* Exhibit 44.  The Court of Special Appeals affirmed the circuit court's ruling, holding that Walker had failed to file timely appeals from circuit court's order granting the State's motion or from the circuit court's denial of his first motion for reconsideration, and that only the circuit court's ruling

43

denying his second, supplemental motion for reconsideration was before it for review.  Exhibit 46 at 17-18.  Addressing the applicable Maryland statutes and rules, the intermediate appellate court concluded that the circuit court had not abused its discretion in denying Walker's supplemental motion for reconsideration.  Exhibit 46 at 18-29.  Walker's subsequent Petition for Writ of Certiorari was denied by the Court of Appeals on December 16, 2003.  *Walker v. State*, 378 Md. 617, 837 A.2d 927 (2003).

Walker's final ground for federal habeas relief relates solely to state court error.  A claim for federal habeas relief, however, is cognizable under § 2254 where the habeas petitioner alleges that his custody violates the Constitution, laws or treaties of the United States.  *Rose v. Hodges*, 423 U.S. 19, 21 (1975).  Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable under § 2254. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Chance v. Garrison*, 537 F.2d 1212 (4th Cir. 1976).  Accordingly, the propriety of circuit court denial of Walker's supplemental morion for reconsideration is not cognizable.  Moreover, to the extent that Walker seeks to challenge the circuit court's ruling vacating its award of habeas relief, any claim in that regard is procedurally defaulted, under the case law discussed in Section V. *supra*, based upon Walker's failure to seek review of that decision and the state intermediate appellate court's plain statement of that default. *See*  Exhibit 46 at 17-18.

Clearly, constitutional error must exist in order to justify federal habeas relief from a state sentence.  *Gaskins v. McKellar*, 916 F.2d 941 (4th Cir. 1990), *cert denied*, 500 U.S. 961 (1991).  Under Section 2254(e)(1), the state circuit court's finding, that Walker was not

entitled to state habeas corpus relief on authority of the Court of Appeals' ruling in *MCI v. Lee,* and that it had jurisdiction to alter and amend its prior ruling based upon the State's timely motion for that relief, are presumptively correct absent clear and convincing evidence to the contrary. Walker's reliance in this Court on *Hill v. Wampler*, 298 U.S. 460 (1936), is inapposite. In *Hill v. Wampler*, the issue involved a federal court review of a court clerk's insertion of language in the commitment relating to a federal sentence. The Supreme Court affirmed that the sentence known to the law is that entered upon the records of the court. *Id*. at 461-67. Inasmuch as Walker's case involved and state court reviewing a state sentence, *Hill v. Wampler* is inapplicable. Regardless, inasmuch as the habeas court was addressing the sentence imposed by the trial court, that court's conclusion that Walker's sentence, as originally imposed, did not entitle him to state habeas relief was entirely consistent with the reasoning of *Hill v. Wampler.*

The state court's ruling regarding the legality of Walker's sentence and the unavailability of state habeas corpus relief, although not cognizable and procedurally defaulted, nonetheless, constitutes a reasonable application of federal law, including *Hill v. Wampler*, 298 U.S. 460 (1936), and should remain undisturbed under Section 2254(d). Under Section 2254(e)(1), the state court's findings, predicated on state law, that Walker's sentences did not provide a basis for state habeas relief, is not to be second-guessed by this Court. *Rose v. Hodges*, 423 U.S. at 21. Moreover, there is no claim of constitutional infirmity and no theory this Court is able to review. In sum, with respect to each of his claims, Walker is simply not entitled to federal habeas corpus relief under 28 U.S.C. § 2254(d).

45

## VII.  CONCLUSION

For the foregoing reasons, and without holding a hearing, this Court should deny the

petition for a writ of habeas corpus filed by Lebon B. Walker.

Respectfully submitted,

J. JOSEPH CURRAN, JR.
Attorney General of Maryland


_____/s/_____
MARY ANN INCE
Assistant Attorney General
Bar No. 07745

Office of the Attorney General
Criminal Appeals Division
200 Saint Paul Place
Baltimore, Maryland  21202
(410) 576-6970 (telephone)
(410) 576-6475 (telecopier)

Counsel for Respondents

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of August, 2006, a copy of the foregoing Answer to Petition for Writ of Habeas Corpus and Order to Show Cause (with exhibits) which was electronically filed on August 30, 2006, was mailed, first class, postage prepaid, to Fred Warren Bennett, Esquire, and Rachel Marblestone Kamins, Esquire, Bennett & Bair, LLP, 6301 Ivy Lane, Suite 418, Greenbelt, Maryland 20770.


_____
MARY ANN INCE
Assistant Attorney General

*INCEM\walker.habans*

47